UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) |
|---|---|
| Plaintiff, | ) Case No. 1:22-cv-01149-WCG |
| v. | ) **PLAINTIFF EEOC'S REPLY MEMORANDUM TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO EEOC'S MOTION UNDER FED. R. CIV. P. 59(e) AND/OR 60(b)** |
| LAKESIDE PLASTICS, INC., | ) |
| Defendant. | ) |

Plaintiff Equal Employment Opportunity Commission ("EEOC") respectfully submits this Reply Brief to Defendant's Memorandum of Law in Opposition to the EEOC's Motion to Alter or Amend a Judgment under Fed. R. Civ. P. 59(e) and/or Relief from a Judgment under Rule 60(b). (Docket No. 44) As a background matter, it is worth noting that Defendant makes no reference to the fact that it violated the local rule requiring prior leave of court to file in excess of 150 proposed facts. Defendant has offered no basis in fact or law to try to excuse its violation of the rule, but instead simply states that its motion for leave to file an excessive number of facts was filed "contemporaneously" with its motion. Secondly, though Defendant seems to want to argue that it would be appropriate for a court to apply rules unequally to the two parties of a suit – when it tries to distinguish cases cited by the EEOC that hold that, in a colloquial phrase, "what's sauce for the goose is sauce for the gander" – it offers no case law in support of its apparent position that courts should be allowed to hold one party to the rules but not the other. This is not surprising, as presumably no such case law exists.

**I.     LEGAL ARGUMENT**

    **A. Defendant violated the local rules and the Court did not sanction Defendant which was an abuse of discretion.**

1

Defendant argues that it "contemporaneously" filed a Motion for Leave to File its Proposed Statements of Material Fact with its Proposed Findings of Fact which was over the limit because it contained 182 paragraphs; the limit is 150. However, Defendant filing the motion "contemporaneously" does not negate the fact that Defendant failed to follow the local rules. Filing the motion for leave the same day, two hours <u>after</u> it filed its statement of facts violates Civil L.R. 56(b)(1)(C)(ii) because the statement of facts that Defendant filed was over the limit of 150 facts. More importantly, Defendant violated Civil L.R. 56(b)(7) because it did not seek **Prior Leave of Court Required to Increase the Number of Statements of Fact or Statements of Additional Fact.** (bold indicated in the local rule) Defendant clearly violated Civil L.R. 56(b)(7) by failing to seek prior leave of court. Moreover, as previously stated by the EEOC, the General Rules explicitly state local rules are to be enforced by the Court, and a party should not file a motion for noncompliance. The local rules also state that collateral motions such as motions to strike are disfavored. Thus, the EEOC expected the Court to address Defendant's noncompliance with the local rules, which the Court did not do. EEOC submits that the Court instead abused its discretion by not applying the local rules equally to each party and granted the motion despite Defendant not seeking prior leave of court. The EEOC did not file a motion for leave to increase the number of statements of additional facts because it followed the rules and filed 100 paragraphs, and believes that it generally limited its submission to one material fact per paragraph. EEOC believes that the Court's sanction of the EEOC was prejudicial and in error.

**B. The Court erred when it disregarded the EEOC's facts and relied on Defendant's facts; construing facts and inferences in favor of Defendant.**

The EEOC maintains that the Court's penalty of not considering any of the proposed statement of additional facts was an inappropriate sanction and unfairly prejudicial as on summary judgment the facts are to be construed in favor of the non-moving party – the EEOC.

2

(Docket No. 43-1, p. 13) In response, Defendant argues that the EEOC cannot point to any part of the Court's decision or offer a single example of where the Court viewed a particular fact or inference in favor of Lakeside, or identify a single "additional fact" that would have changed the result. (Docket No. 44, p. 9) Defendant's assertion is not supported by the record.

In granting Defendant summary judgment on the EEOC's hostile work environment claim, the Court relied on Defendant's facts to find no reasonable jury could conclude that Turner experienced a hostile work environment based on race, and that the conduct was not sufficiently severe or pervasive. The Court relied on DPFOF ¶¶ 76, 77, 79, 80, 81, 84, 85, 86, 97, 98, 99 (Docket No. 41, pp. 5-6, 12-13) Defendant argues that the Court considered the EEOC's responses to Lakeside's Proposed Findings of Fact, but in the 18-page decision, the Court only cited to four of the EEOC's responses to Defendant's facts (Docket No. 41, pp. 4, 6, 7 and 8). These responses do not contain all of the EEOC's additional facts which, if the Court had considered them, would have allowed it to find in favor of the EEOC.

The Court did not consider the EEOC's facts which create a genuine issue of material fact as to whether the harassment was severe, and which would allow a reasonable jury to find for Plaintiff. As such, the Court could have denied summary judgment had the facts been considered. For example, consider the first incident where Curt Moraski told Brian Turner he used to knock n*****s out on the southside, and Turner told him he did not care for that conversation. The Court cites to DPFOF ¶77 that Moraski responded, "we can go out and talk in the parking lot." (Docket No. 41, p. 12) The Court disregards the EEOC's facts that Moraski threatened Turner to go to the parking lot to fight. (Docket No. 32, EEOC ¶8) Not only did Moraski use a racial slur derogatory to Black people in conversation with Turner, who is Black, but Moraski also threatened him to fight. A reasonable jury could find this is severe. (Docket No.

3

33, EEOC Response to Defendant's Statement of Proposed Material Facts, ¶¶78 and 79, not cited by the Court in its opinion.)

The second incident, while Turner was riding his bike home and Moraski followed him driving his truck, involved not just racial harassment but also threats of racial violence: to hit Turner off his bike, knock his "n****r ass out" and hang his "n****r ass." The Court only cites to DPFOF ¶84 (Docket No. 41, p. 12) and, contrary to relevant case law, diminishes or outright dismisses the severity because it "occurred offsite." (*Id*., p. 13) The Court disregarded the EEOC's facts that Turner testified "…it made me feel then, like my life was in danger"; "My main thing was just – human nature, fight or flight. It was the flight. Get out of the situation. It was me on the bike versus a truck"; and "I feared for my house and my life because he dropped me off twice, so I didn't know if he was going to come to my house and try to do something to me or my family." (Docket No. 32, EEOC ¶11) The Court also disregarded Keith Moore's testimony where he stated he witnessed the harassment, and he was worried that it could turn violent. "… And I'm like, wow, I just hope he don't run the guy, poor guy over with his truck and he's on the bike." (Docket No. 32, EEOC ¶12) Moore said Turner was shaken by the incident and he told him to report the harassment because it could continue, and something seriously could end up happening to Turner. (*Id*.) The Court also disregarded that Defendant's HR managers, Matt Malczewski and Kelly Leith, admit Lakeside is responsible for investigating harassment between its employees that occurs "off premises." (Docket No. 32, EEOC ¶82) If the Court would have considered the EEOC's facts and viewed these facts in the light most favorable to the EEOC – the non-moving party – the Court could have found that a reasonable jury could see this incident alone, and more so within the totality of the circumstances, constituted severe racial harassment, and summary judgment could have been denied.

The third incident involved Moraski continuing to harass Turner, the day after he called him racial slurs and threatened to hang him. The Court cites to DPFOF ¶97, 98 and 99 and characterizes it as Moraski showing Turner how to do a job and Turner feeling that he was overstepping. (Docket No. 41, p. 13) The Court disregarded the EEOC's facts that Moraski sought out Turner and told him that he was the boss, and Turner had to listen to him – which was not true. (Docket No. 32, EEOC ¶4) Turner felt Moraski tried to "overpower" him. Turner told Moraski he was going to complain to Lead Max Berndt, and Moraski replied that Berndt would not believe Turner, but would believe him (Moraski). (Docket No. 32, EEOC ¶14) If the Court had viewed these facts in the light most favorable to the EEOC it could have determined that the hostility was not innocuous as Defendant suggested, but a reasonable jury could find within the totality of the circumstance that this was a continuation of the racial harassment, and created a hostile work environment.

In addition, the Court's finding that Defendant took preventative action because the lead reassigned Turner to a different department is contrary to the facts and is an example where the Court viewed the facts in favor of Defendant. (Docket No. 41, pp. 6-7. 12-13, DPFOF ¶¶ 102, 103) The Court disregarded the EEOC's facts that each time Turner complained to his supervisors, leads Berndt and Lor, they ignored him, they did not take any notes, and they did not report it to their supervisor Scholl or HR Director Leith. Simply moving Turner to a different department did not stop the harassment. Due to Defendant's lack of preventative action, the harassment continued until Turner was fired. (Docket No. 32, EEOC ¶¶ 9, 11, 13, 15, and 23) The Court also disregarded the EEOC's facts that Defendant's lack of preventative action was in violation of its own policy where leads must report harassment to their supervisor and Human Resources. Supervisors must report harassment to Human Resources. (Docket No. 32, EEOC ¶

75) Human Resources should have conducted an investigation by gathering witness statements and interviewing the leads, supervisors and employees. (Docket No. 32, EEOC ¶ 78) The Court ignored the fact that Defendant admits that regarding Turner's complaint, the best practice would have been to talk to everyone who worked first shift cones, and admits that if Defendant would have interviewed Keith Moore, it would have known about the harassment. (Docket No. 32, EEOC ¶ 79) Finally, the Court did not consider that Defendant admits that if Human Resources receives a complaint that two employees are not getting along – such as the complaint Leith received about Turner and Moraski – Human Resources should have discussed the unlawful harassment and discrimination policy with both employees and investigated. (Docket No. 32, EEOC ¶ 81) Defendant did not take any of these actions. Accordingly, if the Court had considered the EEOC's facts and made inferences in favor of the EEOC, the Court would likely not have determined that Defendant took preventative action, and that a reasonable jury could find Defendant liable for harassment.

In granting Defendant summary judgment on the EEOC's termination claim, the Court relied on Defendant's facts to find that "the EEOC has not created a genuine dispute of material fact over whether Turner met Lakeside's legitimate expectations at the time of his termination." (Docket No. 41, p. 14) The Court relied on DPFOF ¶¶12-16, 43, 45-46, 48, 58-60 (Docket No. 41, p. 5, 7, 14-16) The Court did not consider EEOC's additional facts which create a genuine issue of material fact for which a jury could find in favor of the EEOC.

For example, the Court relied on Defendant's representation that Turner had poor attendance because he was late twice and absent one day compared to being on time or early 11 days. The Court disregarded the EEOC's additional facts from Lakeside's Human Resources Director that undercut the claim that Turner was not meeting expectations: Leith admitted that if

6

Turner was early or on time more days than he was late or absent that was not sufficiently poor attendance to warrant him being terminated (Docket No. 32, EEOC ¶31); Leith did not tell Turner he had poor attendance and does not know if anyone else did (Docket No. 32, EEOC ¶32); Leith admits Lakeside's policy does not state how many tardies would result in discipline (Docket No. 32, EEOC ¶93); Leith claims she talked to Supervisor Scott Scholl about the decision to terminate Turner but did not have any documentation of this conversation (Docket No. 32, EEOC ¶24); but Scholl denies he talked to Leith (Docket No. 32, EEOC ¶25). Based on a material dispute of fact as to whether Turner had poor attendance, and whether this was a reason for his termination, a reasonable jury could find Defendant's reason was not true, Turner met Defendant's legitimate expectations, and the real reason was race discrimination.

The Court erred by viewing Defendant's facts and arguments in a more favorable light than the EEOC. A reasonable jury could have found in favor of the EEOC if the Court had viewed the evidence in the light most favorable to the non-moving party, the EEOC, and drawn all reasonable inferences in the EEOC's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). The Court did not draw inferences in the EEOC's favor based on the additional facts that the Court disregarded that Turner denies stickering incorrectly (Docket No. 32, EEOC ¶99); Lead Japan Lor did not have any problems with Turner or his work (Docket No. 32, EEOC ¶35); except for the stickering dispute, Lead Berndt did not have any issues with Turner's work performance (Docket No. 32, EEOC ¶36). In fact, as the EEOC offered in its additional facts, Berndt admits that other employees put SKU stickers on the cones incorrectly, and this was something that happened with new employees, and only happened once with Turner (Docket No. 32, EEOC ¶16); Supervisor Scholl said an employee should not be fired for stickering incorrectly (Docket No. 32, EEOC ¶37); Trainer Moore said Turner was a good worker who came in, did his

7

job, and showed up on time, and Moore is not aware of anyone being fired for making a mistake with stickering. (Docket No. 32, EEOC ¶34)

Likewise, the Court erred when it made credibility determinations, finding in favor of Defendant that Turner was fired for an inability to get along with others when the Court relied on Defendant's unsworn statement from Moraski inferring that Turner was the problem not Moraski. (Docket No. 41, p. 8, DPFOF ¶¶ 108, 109) The Court did not consider the EEOC's evidence that the only employee Turner did not get along with was Moraski. (Docket No. 32, EEOC ¶39) Turner denies threatening Moraski or telling Moraski to meet him outside. (Docket No. 32, EEOC ¶46) In addition, Leith said Moraski had no authority to tell Turner how to do his job because Moraski was not a lead or supervisor. (Docket No. 32, EEOC ¶38) Berndt admits it was possible that Turner did not get along with Moraski because Moraski called him racial slurs and threatened him. (Docket No. 32, EEOC ¶41) Scholl admits that if Moraski called Turner racial slurs and threatened him, it would be reasonable for Turner to not get along with Moraski. (Docket No. 32, EEOC ¶45) Berndt admits he did not know if Moraski's allegation that Turner threatened him was true. (Docket No. 32, EEOC ¶47) Berndt described Moraski as a rough individual who was abrasive and had no sense of decorum; Berndt said Moraski was "not great culturally for the environment of the working area," and "[h]e just rubbed people the wrong way, and it could get kind of toxic." (Docket No. 32, EEOC ¶19) Employee Alex Adams said Moraski did not get along with another Black employee, Keith Moore, and he recalled an incident where Moraski called Moore "A piece of shit and then he call him the N-word." Adams, who is White, said Moraski was a racist because of the way Moraski interacted with Black employees. (Docket No. 32, EEOC ¶20) If the Court had considered the EEOC's facts, it could have found a genuine

8

dispute of material fact as to whether Turner was fired for inability to get along with others, and denied Defendant's motion for summary judgment.

In granting Defendant summary judgment on the EEOC's retaliation claim, the Court relied on Defendant's facts to find that "the EEOC has not established that Berndt wrote the note as part of a 'deliberate scheme to trigger a discriminatory employment action.'" (Docket No. 41, p. 17) The Court relied on Defendant's facts to find that "Lakeside terminated Turner based, in part, on poor attendance." (*Id*.) Again, the Court disregarded the EEOC's fact that Leith admitted that Turner did not have sufficiently poor attendance to warrant termination. (Docket No. 32, EEOC ¶31)

The Court abused its discretion by weighing the evidence, making credibility determinations and drawing inferences in favor of the moving party – Defendant – which is not the summary judgment standard. "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" In this case, a reasonable jury is not required to believe Defendant's asserted reasons for Turner's termination because such evidence did not come from disinterested witnesses – Berndt, Scholl and Leith. The Court did not give credence to the EEOC's facts that Berndt did not recommend terminating Turner for attendance, which is the main reason the Court cites for Turner's discharge (Docket No. 41, p. 15) The Court disregarded that Berndt has never recommended that someone be fired because they were one or five minutes late, (Docket No. 32, EEOC ¶27) or that Berndt could have suggested a verbal or

9

written warning instead of termination. (Docket No. 32, EEOC ¶44) A reasonable jury could have easily found that when Turner threatened to call the staffing firm to report discrimination, Berndt told him not to do that and then wrote the note recommending Turner be fired in retaliation for his complaints about racial harassment. (Docket No. 32, EEOC ¶¶ 15, 18, 23) The Court did not consider or give credence to the EEOC's fact that Scholl admitted he did not talk to Berndt, stating "I accepted the note and forwarded it to HR." (Docket No. 32, EEOC ¶25) Likewise, the Court did not consider that Leith told the staffing firm that Turner made up the discrimination claim and she stood by Berndt's note. (Docket No. 32, EEOC ¶ 58) Therefore, if the Court would have considered the EEOC's facts, it could have concluded that Berndt wrote the note to get Turner fired in retaliation for his complaints about discrimination, and Scholl and Leith rubber stamped his recommendation.

## II. CONCLUSION

Based on the foregoing, the EEOC respectfully requests that the Court grant the EEOC's Motion to Alter or Amend a Judgment under Fed. R. Civ. P. 59(e) and/or Relief from a Judgment under Rule 60(b).

Dated: August 1, 2024  Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

/s/ Tina Burnside
Tina Burnside (WI#1026965)
Senior Trial Attorney
Equal Employment Opportunity Commission
Minneapolis Area Office
330 South Second Avenue, Suite 720
Minneapolis, MN 55401
Email: tina.burnside@eeoc.gov
Telephone: (612) 552-7319

/s/ Greger Calhan
Greger Calhan

Trial Attorney
Equal Employment Opportunity Commission
Minneapolis Area Office
330 South Second Avenue, Suite 720
Minneapolis, MN 55401
Email: greger.calhan@eeoc.gov
Telephone: (612) 552-7323